UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MATTHEW DICKSON and JENNIFER
DICKSON, each individually and on
behalf of all others similarly situated                                        PLAINTIFFS

v.                              No. 5:16-CV-05027

GOSPEL FOR ASIA, INC.; GOSPEL FOR
ASIA-INTERNATIONAL; K.P. YOHANNAN;
GISELA PUNNOSE; DANIEL PUNNOSE;
DAVID CARROLL; and PAT EMERICK                                                 DEFENDANTS

**OPINION AND ORDER**

Before the Court is Defendants' motion (Doc. 23) to compel arbitration and brief in support (Doc. 24). Plaintiffs filed a response (Doc. 31), and Defendants filed a reply (Doc. 36) with leave of Court. Defendants argue that contractual arbitration agreements exist between the parties and that pursuant to the Federal Arbitration Act, the dispute in this case must be submitted to arbitration and the case stayed. Plaintiffs argue that both the arbitration agreements and the purported contracts containing the arbitration agreements fail for lack of consideration and vagueness. Plaintiffs further argue that even if there is an agreement to arbitrate, this dispute is outside its scope. Defendants have attached to their motion the purported contracts, each styled as a "Statement of Agreement," which contain the arbitration agreements at issue. (Doc. 23-1, pp. 4–13). These statements of agreement are unsigned by any Defendant or any Defendant's representative, but were signed by Plaintiffs when Plaintiffs were members of Defendants' Texas-based church, and when Mr. Dickson was an employee of Gospel for Asia, Inc.

Also pending are two motions (Docs. 25 and 27) to dismiss and briefs in support (Docs. 26 and 28) filed by Defendants, a response (Doc. 30) filed by Plaintiffs, and Defendants' reply (Doc. 37), filed with leave of Court.

1

I.      **Motion to Compel Arbitration**

The parties agree that Texas law should be applied to determine whether the statements of agreement, or the arbitration agreement provisions within, are valid, non-vague contracts between them.  (Doc. 24, pp. 6–7; Doc. 31, p. 5).  Texas law requires that "[a]rbitration agreements, like other contracts, must be supported by consideration."  *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006).  Plaintiffs argue that there is no consideration because the arbitration agreements in the statements of agreement require performance only from Plaintiffs, and therefore Plaintiffs' promises are illusory.  Defendants argue that they are bound by the terms of the arbitration agreement, and even if they are not that the underlying statements of agreement are supported by adequate consideration—Mr. Dickson's employment and other benefits received by both Plaintiffs—to render the arbitration agreements within them enforceable.

The statements of agreement as a whole contain no mutuality of obligation.  They are not contracts.  Rather, each comprises a mission statement of the Gospel for Asia church and various pledges from the signatory, and places no obligation on any Defendant.  Any promise of Mr. Dickson's continued employment cannot make his statements of agreement valid contracts.  *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 228 (Tex. 2003) (citing *Light v. Centel Cellular Co.*, 883 S.W.2d 642, 645 (Tex. 1994)) ("because at-will employer always retains the option to discontinue employment at any time, the promise of continued employment is illusory and insufficient consideration for employee's promise not to compete.").  Likewise, because association with a religious organization is also "at-will," continued membership in the Gospel for Asia church is insufficient consideration to support a contract, which makes Mrs. Dickson's various pledges illusory promises.  Although Defendants may have given religious training to Plaintiffs, including instruction about applying for tax exemptions, and this training might

generally serve as consideration for a contract, the statements of agreement here do not contemplate such training and there is no evidence that the parties intended that such training would be consideration for the purported contract here. The statements of agreement are not themselves contracts supported by adequate consideration, and do not provide an underlying basis for enforcing the arbitration agreements.

With respect to the arbitration agreements, the Court finds that these agreements do not independently contain any mutuality of obligation, and Plaintiffs' agreement to arbitrate is an illusory promise. The arbitration agreement in each statement of agreement reads:

> I agree that any and all disputes of any kind arising out of the relationship between myself and GFA, or any other GFA member, shall be resolved by way of conciliation, or mediation, the parties agreeing that the matter will be submitted to final and binding arbitration in accordance with the rules and procedures set forth in the Unified Arbitration Act. Accordingly, I knowingly and willingly waive any and all rights to initiate any action before any administrative agency or court of law or equity.

(Doc. 23-1, pp. 7, 10, 13). Plaintiffs, as signatories to the statements of agreement, are the only parties to the arbitration agreements who waive the right to resolve disputes in a manner other than binding arbitration. Gospel for Asia church makes no such waiver in this agreement. The most generous possible interpretation of the agreement is that Gospel for Asia agrees that any arbitration the signatory of the agreement might initiate will be final and binding and take place in accordance with the rules and procedures set forth in the Uniform Arbitration Act.[1] That is, one possible interpretation of the agreement is that, after the signatory submits a dispute to binding arbitration, Gospel for Asia agrees to abide by the arbiter's decision. Contract provisions are considered with reference to the whole instrument, however. *J.M. Davidson, Inc.*, 128 S.W.3d at 229. In this case,

---

[1] The reference in the arbitration agreement to a "Unified Arbitration Act" is clearly a scrivener's error.

3

the whole instrument (the statement of agreement containing the arbitration agreement) is a mission statement of the Gospel for Asia church and a string of pledges by the signatory. Considered in this light, the Court is not convinced that it would be reasonable to read this arbitration agreement as imposing any obligation at all on Gospel for Asia. If the agreement reasonably can be read as obligating Gospel for Asia to abide by an arbiter's decision, it still cannot be read as a waiver of Gospel for Asia's right to resolve disputes in a manner other than arbitration, and there is still no mutuality of obligation. Because there is no mutual obligation to arbitrate, the arbitration agreement is not supported by sufficient consideration and will not be enforced.[2]

Even if one of these arbitration agreements, or the underlying statement of agreement, were supported by sufficient consideration, and even pursuant to the Federal Arbitration Act's liberal policy in favor of arbitration, the claims in this case would not be submitted to arbitration. Where a valid agreement to arbitrate exists, the Court must consider whether the dispute before it falls within the scope of the agreement. *United Steelworkers of America, AFL-CIO-CLC v. Duluth Clinic, Ltd.*, 413 F.3d 786, 788 (8th Cir. 2005). This consideration requires the Court to first determine whether the arbitration agreement is narrow or broad. *Id.* The arbitration agreement in this case is broad, purporting to reach "all disputes of any kind arising out of the relationship" between the parties. (Doc. 23-1, pp. 7, 10, 13). Because the clause is broad, the Court "analyze[s] whether the dispute relates to the subject matter of the agreement." *United Steelworkers of America, AFL-CIO-CLC*, 413 F.3d at 789. In this case, it does not. As stated above, the agreement in this case is an employment or membership agreement. It consists of a mission statement of the

---

[2] Because the Court finds that neither the arbitration agreements nor the underlying statements of agreement are supported by sufficient consideration, and that there is no contract to arbitrate, the Court will not address Plaintiffs' argument that the agreements are too vague to be enforced.

Gospel for Asia church and a series of pledges by the signatory. None of those pledges or mission statements reach donations made by the employee/member to the church. The dispute in this case is not even ancillary to the parties' relationship as memorialized in the statements of agreement, but is entirely unrelated to that agreement. Because there is no contractual arbitration agreement, and because even if there were, the dispute before the Court would be well outside the scope of that agreement, the Court will not order that this dispute be submitted to arbitration.

## II.     Motions to Dismiss

Because this litigation will continue in this forum, the Court must now consider the motions to dismiss. In these motions, Defendants argue that Plaintiffs' complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim because Plaintiffs have not pled their claims with the particularity required by Rule 9(b) or because they have pled them in such a way that they must fail as a matter of law.

With respect to the Rule 9(b) argument, Plaintiffs correctly argue that their allegations provide the heightened notice required by that Rule. Plaintiffs' allegations all involve fraud. Defendants argue that "Plaintiffs fail to plead with particularity any misrepresentation by GFA prior to the Dicksons' 2013 gifts, and accordingly Plaintiffs' individual fraud claims fail." Plaintiffs' complaint alleges that "GFA claims consistently that '100%' of what a donor gives for development, relief, and sponsorship abroad will go 'to the field.'" (Doc. 1, ¶ 17). It is reasonable to infer from this allegation that similar misrepresentations were made to Plaintiffs prior to their 2013 donations. Furthermore, Plaintiffs' complaint cites to a September 3, 2015 version of the "about/financial-integrity" section of Defendants' webpage, www.GFA.org. (*Id.*). Were any Defendant to use the Internet Archive "Wayback Machine" link cited in footnote 3 of the complaint to access earlier versions of that webpage, that Defendant would readily find that the "100%"

representation was made as early as January 15, 2013. *See* https://web.archive.org/web/20130115131400/http://www.gfa.org/about/financial-integrity/, last accessed January 16, 2017 (claiming that "[s]ince the ministry began, we have sent 100% percent [sic] of what you give toward sponsoring a missionary or child to the field. One hundred percent of contributions for use on the mission field are sent to the nations we serve . . . . Our administrative costs are covered through donations designated 'Home Office' or sometimes 'Where Most Needed.'"). Cursory diligence by Defendants would allow Defendants "to respond specifically and quickly to the potentially damaging allegations." *See United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003) (citation omitted) (explaining the intent of Rule 9(b)'s particularity requirement). Defendants' Rule 9(b) argument does not support dismissal of this action.

Turning to Defendants' RICO arguments, with respect to the argument that Plaintiffs have failed to plead two specific predicate acts for each defendant, the Court's view of the case at this stage is that it is one in which "the [specific] facts that would have to be alleged are known to the defendants, but the plaintiffs have not yet had a chance to find them out." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 921 (8th Cir. 2001). The allegations in the complaint place the individual Defendants in positions of authority in the Gospel for Asia church organization, and it is more than reasonable to infer that they would be involved in the racketeering conduct alleged by Plaintiffs. If, after discovery, Plaintiffs cannot identify specific acts of misconduct for any Defendant, summary judgment may be proper at that time. With respect to the argument that Plaintiffs have described Gospel for Asia, Inc. as both a RICO person and the RICO enterprise, and that their RICO claim therefore fails on this technicality, dismissal is inappropriate. The Court agrees with Plaintiffs that Defendants are elevating form over substance in pursuing this argument on their motion to dismiss because, read as a whole, the complaint's allegations make clear that

Gospel for Asia, Inc. was one member of a RICO enterprise consisting of all named Defendants. *Accord Atlas Pile Driving Co. v. DiCon Financial Co.*, 886 F.2d 986, 995 (8th Cir. 1989) (explaining how a corporation can be a member of an association in fact that is a RICO enterprise).

Plaintiffs' complaint is sufficiently pled to overcome the hurdles posed by Defendants' motions to dismiss, and this case must proceed to discovery.

### III.    Conclusion

IT IS THEREFORE ORDERED that Defendants' motion to compel arbitration (Doc. 23) is DENIED.

IT IS FURTHER ORDERED that Defendants' motions to dismiss (Docs. 25 and 27) are DENIED.

IT IS SO ORDERED this 18th day of January, 2017.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE